UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

John Roring,

      Plaintiff,

                                 Case No. 15-13514

v.                                 Hon. Sean F. Cox

Ford Motor Company,

      Defendant.

_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      This is a discrimination case.  Plaintiff John Roring ("Plaintiff") filed this action against

Defendant Ford Motor Company ("Defendant") on October 7, 2015.  Plaintiffs' First Amended

Complaint alleges violations of the Americans with Disabilities Act and violations of Michigan's

Workers Disability Compensation Act.  Plaintiff's claims are premised upon Defendant's alleged

failure to acknowledge Plaintiff's work-related restrictions.

      This matter is before the Court on Defendant's Motion for Summary Judgment.  (Doc.

#20, Def.'s Br.).  Defendant argues, *inter alia*, that Plaintiff has failed to establish a prima facie

case of discrimination under the ADA and that Plaintiff's WDCA claim fails because Plaintiff

has not been constructively discharged.  Plaintiff has filed a response in opposition to the motion

(Doc. #22, Pl.'s Resp.) and Defendant has filed a reply.  (Doc. # 23, Def.'s Reply).

      The Court heard oral argument as to Defendant's motion on January 19, 2016.  For the

reasons set forth below, the Court shall **GRANT** Defendant's Motion for Summary Judgment.

# BACKGROUND

## A.    Procedural Background

On October 7, 2015, Plaintiff John Roring filed this action against Defendant Ford Motor Company.  In his First Amended Complaint,[1] Plaintiff asserts the following claims: Count I - "Americans with Disabilities Act," 42 U.S.C. § 12117 ("ADA"); and Count II - "Worker's Compensation Discrimination," M.C.L. 418.301(13) ("WDCA").  As to Count I, Plaintiff alleges that Defendant violated the ADA by refusing to accommodate Plaintiff's disability.  As to Count II, Plaintiff alleges that Defendant violated Michigan's WDCA by constructively discharging him in retaliation for asserting his rights under the Act.  Plaintiff's complaint seeks monetary relief in an amount exceeding $75,000.

On September 8, 2016, Defendant filed the instant Motion for Summary Judgment. (Doc. # 20, Def.'s Br.).  Plaintiff filed a response in opposition to the motion on September 28, 2016.  (Doc. # 22, Pl.'s Resp.).  This Court's Practice Guidelines, which are expressly included in the Scheduling Order issued in this case, provide, consistent with Fed. R. Civ. P. 56(c) and (e), that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-

---

[1] The Court granted Plaintiff's motion to amend his complaint on July 20, 2016.  (Doc. # 16).

Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Doc. # 9, at 2-3).

In connection with Defendant's Motion for Summary Judgment, Defendant filed a Statement of Material Facts Not In Dispute. (Def.'s Br. at PgID 207-13, Def.'s Stmt.). In response to that submission, Plaintiff's response brief included a "counterstatement of facts." Plaintiff's counter-statement of facts failed to comply with this Court's Practice Guidelines. The Court subsequently ordered Plaintiff to file a counter-statement of disputed facts that complied with this Court's Practice Guidelines, which Plaintiff did on December 28, 2016. (Doc. # 25, Pl.'s Stmt.).

**B.    Factual Background**

The facts relevant to the instant motion are straight forward and largely undisputed. The facts, viewed in a light most favorable to Plaintiff, are as follows. Plaintiff became a full-time employee at Defendant Ford Motor Company on May 5, 1997 and remains employed today. (Def.'s Stmt. at ¶ 1; Pl.'s Stmt. at ¶ 1). Plaintiff was originally hired as a prototype material expediter at a Ford warehouse in Romulus, Michigan. (Def.'s Ex. 1, Pl.'s Dep. at 35). In 1998, Plaintiff's classification changed to "trim specialist" and he was transferred to Defendant's Pilot Plant, located in Allen Park, Michigan. (*Id*. at 36-37). Plaintiff's duties included installing wired sensors into prototype vehicles, which involved pulling out seats, panels and other parts of a vehicle's trim. (*Id*. at 39-40).

In December 2002, Plaintiff injured his thumb in a work-place parking lot. (*Id*. at 57-59).

3

2:15-cv-13514-SFC-APP   Doc # 26   Filed 02/15/17   Pg 4 of 18   Pg ID 597

Plaintiff underwent surgery as a result of the injuries to his thumb on January 3, 2003. (*Id*. at 58-59). Dr. Shreepak Naik, Plaintiff's hand surgeon, subsequently gave Plaintiff medical restrictions in early 2003. (*Id*.).

After Plaintiff's injury, Defendant created a new job for him, which consisted of making reparations to the wiring used in prototype vehicles. (*Id*. at 41-42). Plaintiff was able to perform the tasks associated with this job because it only required the use of one hand. (*Id*.).

On July 8, 2011, Defendant requested an independent medical evaluation ("IME") to determine whether Plaintiff was able to work and whether he still required restrictions. (Def.'s Stmt. at ¶ 4; Pl.'s Stmt. at ¶ 4). Dr. Ronald Rusko performed Plaintiff's IME, stating that Plaintiff should "actively use his hand in a normal manner," and concluded that Plaintiff was "capable of returning to his regular job without restrictions."[2] (Def.'s Stmt. at ¶ 6; Pl.'s Stmt. at ¶ 6). Plaintiff received a copy of the IME report from Defendant's medical staff. (*Id*.).

Plaintiff remained assigned to the wiring job even after the July 2011 IME. (Def.'s Stmt. at ¶ 9; Pl.'s Stmt. at ¶ 9). Plaintiff's supervisor, Mark Textor, understood that Plaintiff no longer had working restrictions, but kept him assigned to wiring because there was an operational need for the work and because Plaintiff had experience doing it. (*Id*.). Plaintiff similarly testified that Defendant could have assigned Plaintiff this job regardless of whether or not he had medical restrictions. (Pl.'s Dep. at 185).

Defendant's medical staff updated Plaintiff's medical restrictions in its Occupational Health and Safety Information Management System ("OHSIM") to reflect the 2011 IME results.

---

[2] Plaintiff had previously been evaluated in 2010 by Dr. Richard Singer, who similarly concluded that no restrictions were necessary. (Def.'s Stmt. at ¶ 6; Pl.'s Stmt. at ¶ 6).

4

(Def.'s Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7). According to OHSIM, Plaintiff's restrictions ended as of July 2011. (*Id*.). Plaintiff was advised by Ford and the union that IMEs were binding pursuant the terms of the Ford-UAW collective bargaining agreement. (Def.'s Stmt. at ¶ 5; Pl.'s Stmt. at ¶ 5). Plaintiff disagreed with the July 2011 IME results, but did not file a grievance or pursue other remedies under the collective bargaining agreement. (Def.'s Stmt. at ¶ 8; Pl.'s Stmt. at ¶ 8).

After the July 2011 IME, Plaintiff would occasionally present notes from Dr. Naik (Plaintiff's hand surgeon) to medical personnel asserting Plaintiffs previous restrictions. (Def.'s Stmt. at ¶ 10; Pl.'s Stmt. at ¶ 10). Rochelle Everett, the Pilot Plant's registered nurse, received these notes from Plaintiff. (*Id*.). When Plaintiff would visit, he confirmed that he had not suffered any new injury since the July 2011 IME. (*Id*.). As such, Everett would inform Plaintiff that Dr. Naik's restrictions were invalid per the binding 2011 IME and Plaintiff would be sent back to work without restrictions. (*Id*.).

In February 2015, because the plant was "in a pinch" due to upcoming deadlines, Plaintiff was informed that he would need to assist in performing duties other than wiring. (Def.'s Stmt. at ¶ 11; Pl.'s Stmt. at ¶ 11). Plaintiff refused, citing his medical restrictions. (*Id*.). Plaintiff was told to report to the medical department. (*Id*.). Everett confirmed that, pursuant to the binding 2011 IME, Plaintiff had no restrictions. (Def.'s Stmt. at ¶ 12; Pl.'s Stmt. at ¶ 12). Everett also informed Plaintiff that Dr. Naik's restrictions, which Plaintiff relied upon, expired in December 2014. (*Id*.). Plaintiff was sent back to work without restrictions.

Plaintiff subsequently submitted notes to Everett from family physician, Michelle Bauer. Dr. Bauer's restrictions were identical to Dr. Naik's restrictions. (*Id*.). Everett informed

Plaintiff that based on the 2011 IME, the fact that nothing had changed in the workplace and the fact that Plaintiff had not suffered a new injury, Plaintiff did not require restrictions for his old injury.  (*Id*.).  Plaintiff also spoke to Labor Relations Associate Derek Gismondi, who similarly informed Plaintiff that he had no restrictions pursuant to the 2011 IME.  (Def.'s Stmt. at ¶ 13; Pl.'s Stmt. at ¶ 13).

Gismondi subsequently contacted Dr. Daniel R. Kelderhouse, Defendant's Executive Physician, to confirm that his interpretation of the July 2011 IME was correct, *i.e.,* that third-party evaluations were binding.  (Def.'s Ex. 5, Kelderhouse Decl. at ¶ 3).  Kelderhouse confirmed that the July 2011 IME was binding despite the restrictions of Plaintiff's family physician.  (*Id*. at ¶ 4).  Kelderhouse further advised that Plaintiff should still report to Gate 4 Medical at the Rouge complex.  (*Id*.).

On February 20, 2015, Everett asked Plaintiff to report to a Gate 4 Medical doctor.  (Pl.'s Dep. at 92-92).  Plaintiff refused and was subsequently disciplined for failing to follow instructions.  (Def.'s Stmt. at ¶ 14; Pl.'s Stmt. at ¶ 14).

On February 23, 2015, Plaintiff was instructed to assist in building up instrumentality trays.  Plaintiff refused, citing Dr. Bauer's restrictions.  Roring was informed that he had no restrictions pursuant to the July 2011 IME.  When Plaintiff refused a second time, he was sent home for the balance of his shift.  (Def.'s Stmt. at ¶ 15; Pl.'s Stmt. at ¶ 15).

On February 24, 2015, Plaintiff refused another job assignment, citing his restrictions.  (Def.'s Stmt. at ¶ 16; Pl.'s Stmt. at ¶ 16).  Plaintiff was sent home for the balance of his shift, plus one day.  (*Id*.).

When Plaintiff returned to work on February 26, 2015, he was assigned to train

temporary workers who had been hired to help at the Pilot Plant during the busy period.  (Def.'s Stmt. at ¶ 17; Pl.'s Stmt. at ¶ 17).  Plaintiff continued this training until May 2015 and had no complaints about the job.  (*Id*.).

On March 19, 2015, Plaintiff complied with an instruction to report to Gate 4 of the Rouge complex to visit a Ford doctor.  (Def.'s Stmt. at ¶ 18; Pl.'s Stmt. at ¶ 18).  Dr. Brenda Ubom reviewed Plaintiff's medical history (including the 2011 July IME) and performed an examination of Plaintiff's hand.  (Ex. 9 to Def.'s Br., Ubom Dec. at ¶ 4).  Dr. Ubom also asked to speak to Dr. Bauer as the next step in assessing Plaintiff's claim that he needed restrictions.  (*Id*. at ¶¶ 4-5).  Plaintiff refused to sign a waiver and prevented Dr. Ubom from proceeding further, thereby obstructing her ability to fully evaluate and ascertain the need for his claimed restrictions.  (*Id*. at ¶ 6).  Per Dr. Ubom's examination and the July 2011 IME, Plaintiff was recommended to return to work without restrictions.  (*Id*. at ¶ 4).

At his deposition, Plaintiff testified that he would not agree to a full examination by Dr. Ubom and that he would not agree to participate in a new IME under the Ford-UAW collective bargaining agreement, should Defendant choose to seek one.  (Def.'s Stmt. at ¶ 21; Pl.'s Stmt. at ¶ 21).

In May 2015, Plaintiff went on medical leave for mental health reasons on the advice of union official Craig Glover.  (Def.'s Stmt. at ¶ 19; Pl.'s Stmt. at ¶ 19).  Plaintiff admits that no one from Defendant advised Plaintiff to take leave.  (*Id*.).  Plaintiff testified that Glover was concerned that Defendant would terminate Plaintiff if Plaintiff continued to refuse assignments.  (*Id*.).  Glover's advice was not based upon any threat that Defendant intended to write Plaintiff up or terminate him.  (*Id*.).

According to Plaintiff, prior to taking leave in May 2015, Gismondi attempted to give Plaintiff a new job assignment. (Def.'s Stmt. at ¶ 20; Pl.'s Stmt. at ¶ 20). Plaintiff does not know what the next job assignment would have been and took leave without inquiring what the job would entail. (*Id.*). According to Textor, Plaintiff was going to return to the wiring job he had previously performed because there was an operational need. (*Id.*).

## STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984), quoting FED. R. CIV. P. 56(C).

The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case. *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). In response, the nonmoving party must come forth with more than a "mere scintilla of evidence" in support of his or her position in order to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

The court must view the evidence, all facts, and any inferences that may permissibly be

drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Civil Rule 56(c)(1) provides:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A)   citing to particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## ANALYSIS

### A.   Plaintiff Has Not Established A Failure To Accommodate Claim Under The ADA

The ADA provides that an employer "shall [not] discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, employers

are required to make reasonable accommodations for known disabilities unless doing so would

result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). An employer's failure

to accommodate constitutes a "form of discrimination on the basis of disability." *Johnson v.*

*Cleveland City Sch.*, 344 Fed. App'x 104, 110 (6th Cir. 2009).

In order to establish a prima facie case for failure to accommodate under the ADA[3], a

---

[3] The Court notes that Defendant failed to apply the proper standard for failure to accommodate claims. Despite this, however, the Court agrees that Plaintiff's claim fails for reasons outlined in this Opinion & Order.

plaintiff must typically show that: "'(1) [he] is disabled within the meaning of the Act; (2) [he] is otherwise qualified for the position, with or without reasonable accommodation; (3) [his] employer knew or had reason to know about his disability; (4) [he] requested an accommodation; and (5) the employer failed to provide the necessary accommodation.'" *E.E.O.C. v. Dolgencorp, LLC*, 2016 WL 3774492, at * 13 (6th Cir. July 7, 2016) (quoting *Johnson v. Cleveland City School Dist.*, 344 Fed. App'x 104, 111 (6th Cir. 2009)).  Once a plaintiff establishes his prima facie case, the burden shifts to the employer to demonstrate that an accommodation would impose an undue hardship.  *Id.*

Plaintiff argues that Defendant violated the ADA by failing to engage in an interactive process, which would have identified an effective and reasonable accommodation for his disability, as is required under the ADA.  Assuming, without deciding, that Plaintiff is able to fulfill the first four prongs of his prima facie case, he still cannot establish prong five, *i.e.* that Defendant failed to provide the necessary accommodation.

### 1.      The July 2011 IME & Break Down of Interactive Process

Once an employee requests an accommodation, "the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Melange v. City of Center Line*, 482 Fed. App'x 81, 84 (6th Cir. 2012) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007)).

Here, Plaintiff has not produced evidence establishing that Defendant did anything other than attempt to confirm whether Plaintiff incurred a new injury that required restrictions. Plaintiff's claim fails for a number of reasons.  Initially, Plaintiff ignores the effect of the valid

and binding 2011 IME.  Moreover, Plaintiff overlooks the fact that he was never officially

assigned a task that violated his alleged restrictions.  And finally, the evidence establishes that it

was Plaintiff (not Defendant) that thwarted the interactive process required under the ADA.

**The July 2011 IME.**  First, Plaintiff conveniently disregards the fact that an "employer

need not take the employee's word for it that the employee has an illness that may require

special accommodation.  Instead, the employer has the ability to confirm or disprove the

employee's statement."  *E.E.O.C. v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094 (6th Cir.

1998).  Otherwise, "every employee could claim a disability warranting special accommodation

yet deny the employer the opportunity to confirm whether a need for the accommodation exists."

*Id.*  In making this determination, an employer is permitted to rely on the results of a medical

examination so long as it is an "individualized inquiry" based on the employee's actual medical

condition.  *See Ferrari v. Ford Motor Co.*, 96 F. Supp. 3d 668, 676 (E.D. Mich. 2015).

Here, Plaintiff does not dispute that he was personally examined by Dr. Rusko in July

2011 as part of an IME.  As such, it remains undisputed that a valid and binding IME determined

that Plaintiff's thumb injury no longer required restrictions.  Nor can Plaintiff deny that he had

been informed by both Defendant and the union that the July 2011 IME results are binding and

valid pursuant to the collective bargaining agreement.[4]   And although Plaintiff claims he

disagreed with Dr. Rusko's conclusions, Plaintiff did not file a grievance or challenge the

---

[4] To the extent that Plaintiff now argues that the collective bargaining agreement does not apply, this argument is not properly before the Court.  As Defendant correctly explains, Plaintiff can challenge the interpretation of the agreement by bringing a Section 301 hybrid claim under the Labor Management Relations Act.  Plaintiff has not done so here and, in any event, doing so would be untimely because Section 301 has a six-month limitations period.  *Martin v. Lake Cty. Sewer Co.*, 269 F.3d 673, 679 (6th Cir. 2001).

examination under the agreement in any way.  Importantly, "the ADA does not provide for a plaintiff to challenge the reasonable medical judgment an employer relies upon." *See Jennings v. Dow Corning Corp.*, 2013 WL 1962333, at *12 (E.D. Mich. May 10, 2013).

Moreover, a viable failure to accommodate claim requires an employee to have actually been deprived of a needed accommodation.  Here, despite Defendant's refusal to acknowledge Plaintiff's need for restrictions, it remains undisputed that Plaintiff never was never officially assigned a task that violated his alleged restrictions.  Instead, Plaintiff was assigned to a light duty training job until May 2015.  In light of these facts, Defendant accommodated Plaintiff despite the fact that it did not believe Plaintiff required any accommodation.

*Interactive Process*.  To the extent that Plaintiff argues that Defendant failed to engage in an interactive process, the Court disagrees.  Plaintiff disregards Defendant's multiple attempts to reevaluate Plaintiff's claimed need for restrictions.  Here, the undisputed facts establish that it was Plaintiff who thwarted Defendant's efforts to ascertain why Plaintiff required restrictions despite the binding July 2011 IME findings.

The notion that employers must engage in an interactive process to identify reasonable accommodations stems from the Regulations accompanying the ADA.  *Lockhard v. General Motors Corp.*, 52 Fed. App'x 782, 787 (6th Cir. 2002) (citing 29 C.F.R. § 1630.2(o)(3)(1995) ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation").  Reasonable accommodations are "best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability."  29 C.F.R. pt. 1630, App. § 1630.9.

12

Although the ADA fails to describe the interactive process, it is mandatory and both parties are obligated to participate in good faith. *Banks v. Bosch Rexroth Corp.*, 610 Fed. App'x 519, 529 (6th Cir. 2015) (citing *Kleiber*, 485 F.3d at 871). "Should a party obstruct the process or otherwise fails to participate in good faith, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Kleiber*, 485 F.3d at 871.

Here, Plaintiff mistakenly assigns responsibility for the breakdown to Defendant. The Court shall assume, without deciding, that Plaintiff initiated the interactive process in February 2015 when he refused to assist in tasks he believed violated his restrictions. Defendant's supervisors reasonably responded by asking Plaintiff to report to Medical.

When Plaintiff reported to Nurse Everett on February 6, 2015, he stated that he had work-related restrictions based on Dr. Naik's 2014 note. In response, Everett asked Plaintiff whether he had suffered a new injury since the July 2011 IME. Because Plaintiff had not suffered a new injury, and instead was basing his restrictions on an old injury, Everett concluded that the July 2011 IME remained binding and valid. Everett further informed Plaintiff that the note he was relying on for his purported restrictions had expired in December 2014. Thus, at this point in time, Plaintiff did not even have any active doctor's notes on file.

Plaintiff returned several days later with an identical note from family physician, Dr. Bauer. Everett again advised Plaintiff that because Plaintiff had not suffered a new injury, the July 2011 IME remained binding and Plaintiff therefore did not require restrictions for his old injury.

Although Defendant did not believe that Plaintiff had any valid restrictions, Plaintiff was still asked to report to Gate 4 Medical on February 20, 2016 so that his claimed need for

13

restrictions could be evaluated.  Plaintiff refused to report to Defendant's doctors.  Thus, he was written up for failing to follow instructions and sent home for the remainder of his shift.

On February 23, 2015 and February 24, 2015, after Plaintiff failed to report to Defendant's doctors, Plaintiff refused to assist in tasks he claimed violated his work-related restrictions.  Plaintiff was subsequently written up and sent home on both dates.  When Plaintiff returned to work on February 26, 2015, he was assigned a light duty training job and Plaintiff made no further complaints.

Nearly one month later, on March 19, 2015, Plaintiff complied with a *second* request to report to Gate 4 Medical.  Critically, though, Plaintiff still refused to fully cooperate.  Specifically, Plaintiff prevented Dr. Ubom from fully evaluating his claimed need for restrictions by refusing to allow her to follow up with his family physician.  Plaintiff testified that he felt there was no need for Dr. Ubom to follow up with his physician.  He also testified that he did not agree to a full examination by Dr. Ubom and that he would not submit to a new IME by Defendant if Defendant were to seek one.

As such, it cannot be established that Defendant exercised bad faith when it attempted to engage in the required interactive process.  In fact, the facts establish that it was Plaintiff who initially refused to see Defendant's doctors.  It is also undisputed that when Plaintiff finally did oblige, he failed to fully cooperate, *i.e.* Plaintiff prevented Dr. Ubom from contacting his family physician regarding his purported restrictions.

Because the evidence establishes that Plaintiff was responsible for the breakdown in the interactive process, Plaintiff's failure to accommodate claim fails and summary judgment in Defendant's favor is appropriate.  *See Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 531-32

14

(6th Cir. 2015) ("We conclude that Banks's refusal to engage in the interactive process caused its breakdown and her claim for failure to accommodate fails").

**B.      Plaintiff Has Not Established Retaliation Under The WDCA**

Plaintiff alleges that he was constructively discharged in retaliation for asserting his rights under Michigan's Worker's Disability Compensation Act.  Section 301 of the WDCA provides, in pertinent part, that:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

M.C.L. 418.301(13).

In order to establish a prima facie case of retaliation under the WDCA, Plaintiff must establish that: (1) Plaintiff asserted his right to workers' compensation benefits; (2) that Defendant knew that Plaintiff asserted his right to workers' compensation benefits; (3) that Plaintiff suffered an adverse employment action; and (4) there was a causal connection between Plaintiff's assertion of his rights and the adverse employment action.  *Dortman v. ACO Hardware, Inc.*, 405 F. Supp. 2d 812, 822 (E.D. Mich 2005) (citing *Chiles v. Mack Shop, Inc*., 238 Mich. App. 462, 470 (1999)).

"The *McDonnell Douglas/Burdine* burden shifting approach applies to workers' compensation retaliation claims." *Id.* "Once a plaintiff establishes a prima facie case, the *McDonnell Douglas* approach shifts the burden to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision." *Id.* (internal citations omitted).  If the defendant meets its burden of production, the plaintiff bears the burden of proving that the defendant's legitimate, non-discriminatory reason was pretextual. *Id.*

15

### 1.    Adverse Employment Action

Plaintiff's WDCA claim fails for a number of reasons.  First, even assuming Plaintiff asserted a right under the WDCA, Plaintiff cannot establish the second prong of his prima facie case, *i.e.* that he suffered an adverse employment action.  The adverse employment action at issue here is Plaintiff's alleged constructive discharge.

The most obvious problem with Plaintiff's claim is that he remains employed by Defendant.  Plaintiff did not voluntarily quit and Defendant did not terminate Plaintiff's employment.  Instead, it is undisputed that Plaintiff voluntarily took medical leave.  This is insufficient for purposes of establishing a constructive discharge.  "[W]hile an employer's action may lead to a constructive discharge, such a discharge itself generally cannot become evident until the employee has, in fact, left the employment . . . .  Until the employee resigns, the employer's action has yet to prove to be one of discharge."  *Chambers v. Trettco, Inc.*, 463 Mich. 297, 317-18 (2000); *see also Foster v. Dow Corning Corp.*, 2005 WL 1632814, at *2 (Mich. Ct. App. July 12, 2005) ("Here, plaintiff did not resign her position when she went on medical leave").

Moreover, even if Plaintiff was no longer employed by Defendant, his constructive discharge claim would still fail.  A constructive discharge occurs only where an employer's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign.  *Champion Nation Wide Security, Inc.*, 450 Mich. 702, 710 (1996).  Stated differently, a constructive discharge is established when working conditions become so difficult and/or unpleasant that a reasonable person in the employee's position would feel compelled to resign. *Mourad v. Automobile Club Ins. Association*, 186 Mich. App. 715, 721 (1991).

16

Here, the facts establish that Plaintiff was disciplined on two occasions (on February 23, 2015 and on February 24, 2015) for refusing to assist in tasks he believed violated his restrictions. Upon his return to work, on February 26, 2015, Plaintiff was assigned a light duty training job. Plaintiff had no complaints about the job and was able to perform it despite his restrictions. Plaintiff continued working this job until May 2015.

Plaintiff's position is that he feared that once the training job ended, Defendant would assign him a new job that violated his restrictions. Thus, Plaintiff argues that it was only a matter of time before his refusal to violate his restrictions would result in termination of his employment. Accordingly, Plaintiff took the advice of a union representative and went on medical leave in May 2015. However, Plaintiff admitted that he took medical leave before asking what his next assignment would have been. Notably, Plaintiff's supervisor intended to place Plaintiff back on the wiring job.

Plaintiff's subjective and speculative assertions are not sufficient to sustain a claim for constructive discharge. *See e.g. Agnew BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) ("An employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged. Instead, the employee is obliged not to assume the worst, and not to jump to conclusions too fast") (internal quotations omitted).

Here, no rational jury could conclude that Defendant made Plaintiff's working conditions so intolerable that he was forced into involuntary resignation. Nor could any rational jury conclude that Plaintiff's working conditions became so difficult and unpleasant that a reasonable person in his position would have felt compelled to resign. Instead, the undisputed facts establish that Plaintiff was disciplined for refusing to assist in tasks only two times and that both

17

times occurred only days after Plaintiff failed to report to Defendant's doctors.  Moreover,

Defendant subsequently assigned Plaintiff a light duty training job despite Defendant's belief

that Plaintiff did not require restrictions.

### 2.    Pretext

Moreover, assuming that Plaintiff could establish a prima facie of retaliation under the

WDCA, Plaintiff cannot establish pretext. Here, Defendant believed that Plaintiff's thumb injury

no longer required restrictions based upon the valid July 2011 IME.  Defendant's OHSIM

indicated that, per the July 2011 IME, Plaintiff did not require restrictions.  Plaintiff was told by

Nurse Everett and the union that the July 2011 IME was binding under the collective bargaining

agreement.  The binding nature of the 2011 IME was later confirmed by Defendant's executive

physician, Dr. Kelderhouse.  Plaintiff has not established that these reasons were pretextual.

Thus, Defendant is entitled to summary judgment on this basis as well.

### CONCLUSION

For the reasons set forth above, the Court shall **GRANT** Defendant's Motion for

Summary Judgment.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 15, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on
February 15, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager